## A08A1556. AGUILERA v. THE STATE.
(667 SE2d 378)

MILLER, Judge.

Following a jury trial, Cesar Hernandez Aguilera was convicted of a single count of trafficking in marijuana, in violation of OCGA § 16-13-31. Aguilera now appeals from the trial court's denial of his new trial motion, claiming (i) that the trial court erred in instructing the jury; and (ii) that the evidence was insufficient to sustain his conviction. Discerning no error, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.

(Citations and punctuation omitted.) *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007). Additionally, "[i]n reviewing an allegedly erroneous jury instruction, we apply the 'plain legal error' standard of review." (Citation, punctuation and footnote

---

omitted.) *White v. State*, 291 Ga. App. 249, 251 (661 SE2d 865) (2008).

So viewed, the evidence shows that this case arose out of an undercover sting operation conducted by the City of Grantville Police Department, with the cooperation of United Parcel Service ("UPS"). The operation began after the police received reports of packages being delivered by UPS to vacant residences in Grantville, where they were picked up by Hispanic males. An investigation revealed that all of the packages being sent to vacant residences in Grantville were shipped by Trejo Income Tax Services ("Trejo"), located in Texas. The police also learned that, on many occasions, Hispanic males would intercept the UPS driver on his route through Grantville and ask for packages addressed to one or more of the vacant residences in question.

On October 30, 2006, UPS identified three packages shipped by Trejo and scheduled for delivery to vacant residences in Grantville. In its contracts with customers, UPS expressly reserves the right to open and inspect any package being shipped. It therefore decided to open the packages, one of which was addressed to 69 Arnold Street in Grantville. When it did so, UPS discovered that each of the packages contained a significant amount of what appeared to be marijuana, and UPS turned the packages over to the Grantville Police Department. Law enforcement thereafter decided to attempt a "controlled delivery" of these packages, meaning that they would allow UPS to deliver the same under police surveillance.

Later that day, the UPS driver in Grantville was twice approached by Aguilera and his co-defendant, Armando Carranza, and Aguilera asked if the driver had any packages addressed to 69 Arnold Street. When approached the second time, the driver, acting at the direction of law enforcement, gave Aguilera the package. Aguilera and Carranza placed the package in the trunk of their car and began to drive away. When they saw they were being followed by a marked patrol car, Aguilera and Carranza made an illegal U-turn, and began to drive in the opposite direction. The police were subsequently able to stop the car and arrested both men. An officer requested permission to search the car, and Carranza, who had been driving, gave his consent. Law enforcement recovered the UPS package from the car's trunk and later determined that it contained approximately 30 pounds of marijuana.

At the time of his arrest, Aguilera gave police a false name.[1] In response to police questioning, both Aguilera and Carranza stated

---

[1] Although Aguilera gave his name as Cesar Hernandez Aguilera, police later determined that this was an alias, and that his given name is Carlos Puentes.

that they had each been paid $100 to travel to Grantville and pick up the box addressed to 69 Arnold Street. Both men claimed they were unaware of the package's contents, although Carranza eventually admitted that he "should have known" what was in the box. Neither man ever identified the person who had paid them to retrieve the UPS package.

At trial, the court instructed the jury, over the objections of defense counsel, as to the principles of deliberate ignorance and conspiracy. Following his conviction, Aguilera moved for a new trial. The trial court denied that motion and this appeal followed.

1. To convict Aguilera of trafficking in marijuana, the State was required to prove his knowing possession of ten pounds or more of the drug. OCGA § 16-13-31 (c). Here, the State argued that the evidence proved Aguilera's knowledge because it showed he remained deliberately ignorant of the package's contents. Under the theory of deliberate ignorance, "if a party has his suspicions aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge." (Citation and footnote omitted.) *Perez-Castillo v. State*, 257 Ga. App. 633, 634 (572 SE2d 657) (2002). On appeal, Aguilera asserts that the trial court erred in giving the State's requested instruction on deliberate ignorance. We disagree.

An instruction on deliberate ignorance is appropriate "when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." (Citation, punctuation and footnote omitted.) *Perez-Castillo*, supra, 257 Ga. App. at 635. Facts supporting such an inference existed in this case. Specifically, the evidence showed that Aguilera and his co-defendant were paid $100 each to drive to Grantville for the sole purpose of picking up a UPS package being shipped to a vacant address in that city. They approached the UPS driver on two occasions to ask if he had the package in the truck, demonstrating their awareness that the package was not intended for delivery at the Arnold Street address — i.e., that it was being shipped to Grantville under false pretenses. Additionally, the men attempted to elude police once they had retrieved the package, they never disclosed to police the name of the person who had paid them to pick up the UPS shipment, and Aguilera provided the police with a false name. In light of the foregoing, the trial court's instruction on deliberate ignorance was not error. See *Polite v. State*, 273 Ga. App. 235, 242 (8) (614 SE2d 849) (2005) ("To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge.") (citation and punctuation omitted).

2. We also disagree with Aguilera's assertion that the jury instruction as to conspiracy was not supported by the evidence.

Under OCGA § 16-4-8, "[a] person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." "Two elements are necessary for the crime of conspiracy: an agreement and an act in furtherance of it." (Citation omitted.) *Sexton v. State*, 269 Ga. App. 709, 710 (1) (605 SE2d 103) (2004). "The question of the existence of a conspiracy is ultimately for the jury to determine." (Citation and punctuation omitted.) *Guerra v. State*, 210 Ga. App. 102, 103 (1) (435 SE2d 476) (1993). "It is not necessary to prove an express agreement between two or more co-conspirators . . . to prove the existence of a conspiracy. The state need only prove that two or more persons tacitly came to a mutual understanding to accomplish or to pursue a criminal objective." (Citation and punctuation omitted.) Id. See also *Brown v. State*, 177 Ga. App. 284, 295 (9) (339 SE2d 332) (1985) ("The type of agreement necessary to form a conspiracy is not the meeting of the minds necessary to form a contract. . . .") (citation and punctuation omitted).

This tacit understanding may be proved by circumstantial evidence, "inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances." (Citation omitted.) *Williamson v. State*, 285 Ga. App. 779, 783 (4) (648 SE2d 118) (2007). Circumstances supporting an inference of conspiracy include "[p]resence, companionship and conduct before and after the commission of the alleged offenses," as well as flight from police. (Citation and punctuation omitted.) *Guerra*, supra, 210 Ga. App. at 103 (1). Such circumstances exist in this case. Aguilera and Carranza were paid to drive together to Grantville for the express purpose of retrieving a UPS package, they deliberately retrieved the package before it could be delivered to the address where it was being shipped, they attempted to flee police after retrieving the package, and they refused to tell police who had hired them. Taken together, these facts support the inference of a conspiracy. See *Whitton v. State*, 178 Ga. App. 862, 865 (1) (344 SE2d 703) (1986) ("The existence of a conspiracy may be [inferred] . . . from acts and conduct, which discloses a common design on [the] part [of the conspirators] to act together for the accomplishment of the unlawful purpose.") (citation and punctuation omitted); *Belmar v. State*, 252 Ga. App. 264, 266 (1) (555 SE2d 902) (2001) (conviction for conspiracy will be affirmed where there is "some foundation on which the jury could determine . . . that a conspiracy existed"). Accordingly, the trial court's jury instruction on this issue was not error.

3. Nor do we find any merit in Aguilera's claim that the evidence was insufficient to sustain his conviction. In support of this claim, Aguilera argues that to warrant a conviction, circumstantial evidence must exclude every reasonable hypothesis save the guilt of the accused. He claims that the circumstantial evidence in this case failed to exclude the hypothesis that he lacked knowledge of the UPS package's contents. We disagree.

> Whether circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury, and the jury's finding on this question will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

(Citations and punctuation omitted.) *Drammeh*, supra, 285 Ga. App. at 547 (1). As noted in Division 1, supra, there was evidence supporting the jury's finding as to the knowledge element of the crime, based on Aguilera's deliberate ignorance as to the contents of the UPS package. "This [same] circumstantial evidence was sufficient to allow the jury to exclude every reasonable hypothesis save the guilt of [Aguilera]." (Punctuation omitted.) Id. at 548 (1). See also *Sandoval v. State*, 260 Ga. App. 61, 64 (1) (579 SE2d 75) (2003).

In light of the foregoing, we affirm the trial court's denial of Aguilera's motion for a new trial.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 11, 2008.

*Ricardo G. Samper*, for appellant.
*Peter J. Skandalakis, District Attorney, Kevin T. McMurry, Assistant District Attorney*, for appellee.