A06A2395. FLEXIBLE PRODUCTS COMPANY et al. v. ERVAST.

(643 SE2d 560)

MILLER, Judge.

This case arose after Roger Ervast resigned from the Flexible Products Company ("Flexible" or the "Company") and elected to sell back to the Company the shares of Company stock he had acquired through the Company's Employee Stock Ownership Plan ("ESOP") and Long-Term Incentive Plan (the "Incentive Plan"). At that time, Flexible was engaged in merger negotiations with Dow Chemical Company ("Dow"). Ervast brought suit against Flexible and two of its officers, Randy Peterson and Doug Cruickshank, for breach of fiduciary duty, negligence, and OCGA § 13-6-11 attorney fees. Ervast claimed that they had a fiduciary duty to tell him, as a minority shareholder, of the potential merger prior to the sale of his stock and sought damages for the difference between his stock's pre- and post-merger values. Following a jury trial, the trial court entered judgment on the jury's verdict in favor of Ervast and against Flexible, Peterson, and Cruickshank in the amount of $2,729,691.

Flexible appeals, contending that the trial court erred in giving the jury conflicting instructions; erred in admitting the testimony of Ervast's "materiality" expert; and erred in denying its motion for a directed verdict. Finding that the trial court gave conflicting jury instructions regarding whether corporate officers and directors could rely upon the advice of counsel as a defense to liability, we must reverse. Since Flexible's remaining claims of error present issues which may arise upon a retrial of the case, should it occur, we also address such claims in the interest of judicial economy.

Viewed in the light most favorable to the jury's verdict, the record shows that Flexible employed Ervast, a chemical engineer, as the director of its research and development department. As a participant in Flexible's ESOP and Incentive Plan, Ervast accumulated more than 3,000 shares of Flexible's common stock. On October 4, 1999, Ervast tendered his resignation to Flexible, and sold the foregoing shares in the Company at the pre-merger price per share. On October 11, 1999, Ervast received his ESOP payout from Flexible and sold his stock back to Flexible under the Incentive Plan.

In September 1999, Dow contacted Flexible and expressed an interest in buying the Company. Representatives of both companies met that month to discuss the potential acquisition, and on October 1, 1999, the companies entered into a confidentiality agreement in which Dow agreed to make an offer to purchase Flexible. On October 7, 1999, Dow's senior vice president notified Flexible that an offer to purchase Flexible was pending. On October 26, 1999, Dow telephonically offered a price that Flexible was willing to consider, and, on November 10, 1999, Flexible and Dow executed a letter of intent in which they agreed upon a purchase price. In February 2000, the merger was consummated.

Prior to his sale of Flexible stock, no one told Ervast of the existence of the merger negotiations. After the merger was effective, Flexible determined that merger negotiations had become "material" on October 26, 1999, because it was on that date that Dow proposed the merger price which Flexible's board of directors considered. As a result, Flexible paid all shareholders who sold their shares after that date the higher merger price per share.

1. Flexible contends that the trial court erred in giving conflicting jury charges as to the advice of counsel defense. We agree.

The trial court correctly charged the jury that corporate directors and officers are entitled to reasonably rely on the opinions of counsel in carrying out their duties, absent knowledge in the director or officer as to the matter in issue which would make such reliance unwarranted. OCGA §§ 14-2-830; 14-2-842. In this case the trial judge, subsequently, further instructed the jury under OCGA § 15-19-17 that "a defendant is not relieved from . . . liability for damages

and penalties imposed by law on the ground that [defendants] acted under the advice of counsel. Rather, defendant is entitled to redress from . . . counsel for unskillful advice."

At best, the foregoing instructions were contradictory and confusing — on the one hand telling jurors that corporate directors and officers were protected from liability upon the advice of counsel, yet, on the other, instructing them that as "defendants" they were not. " 'A charge containing two distinct propositions conflicting the one with the other is calculated to leave the jury in such a confused condition of mind that [it] can not render an intelligible verdict, and requires the grant of a new trial.' [Cits.]" *Dent v. Mem. Hosp. of Adel*, 270 Ga. 316, 317 (509 SE2d 908) (1998). The jury cannot be expected to select one part of a charge to the exclusion of another, nor to decide between conflicts in the charge or determine whether one part cures a previous error, without having its attention specially called thereto and being instructed accordingly. *Morrison v. Dickey*, 119 Ga. 698 (2) (46 SE 863) (1904).

Here, the trial court's charges as to the advice of counsel were in unreconciled conflict and confused as to liability. Ideally, such charges would have explained (i) that liability for actions based on the advice of counsel is generally foreclosed pursuant to OCGA § 15-19-17, and (ii) that an exception to the general rule existed for corporate directors and officers subject to certain conditions under OCGA §§ 14-2-830 and 14-2-842. Instead, the trial court first charged the exception to the rule that is generally available to corporate directors and officers in carrying out their duties. Separately, and after giving several unrelated instructions, the trial court then charged the general rule foreclosing relief from liability upon the advice of counsel for damages and penalties imposed by law.

The trial court's charges failed to address the relationship between the general rule and the exception for corporate directors and officers. No curative charge was given, and we are unable to say that this conflict was harmless in the circumstances of this case. See *Johnson v. State*, 148 Ga. App. 702, 704 (2) (252 SE2d 205) (1979); *State Hwy. Dept. v. Hilliard*, 112 Ga. App. 498, 499 (1) (145 SE2d 824) (1965); *Baxter v. State Hwy. Dept.*, 108 Ga. App. 324 (132 SE2d 863) (1963). That the jury charge was in conflict and confusion as to liability upon the advice of counsel, the grant of a new trial is required.

2. Although our holding in Division 1 is dispositive of this case, as a matter of judicial economy, we address the following issues as likely to recur upon retrial:

(a) Flexible contends that the trial court erred in admitting the testimony of Ervast's expert materiality witness, arguing that what

is a material failure to disclose information presents a mixed question of law and fact as to which opinion evidence is inadmissible. We agree.

Ervast's expert testified that "materiality" triggering the duty to disclose[1] occurred on October 1. Such testimony, as a conclusion constituting a mixture of law and fact taking the ultimate issue away from the factfinder, was not admissible as opinion evidence. See *Rios v. Norsworthy*, 266 Ga. App. 469, 472 (2) (597 SE2d 421) (2004) (affidavit mixing law and fact as to negligence inadmissible opinion evidence).

(b) Flexible contends that the trial court erred in denying its motion for a directed verdict. We disagree.

> A directed verdict is not authorized unless the evidence and all reasonable deductions therefrom demand a certain verdict. OCGA § 9-11-50[.] And, where a directed verdict was denied and the jury has made a certain ruling, the evidence is to be construed in favor of the jury's finding and in favor of the non-movant, and a trial court cannot substitute its judgment for the jury's if there is any evidence to support it.

(Citations, punctuation and emphasis omitted.) *First Union Nat. Bank of Ga. v. Davies-Elliott, Inc.*, 215 Ga. App. 498, 502 (1) (a) (452 SE2d 132) (1994).

(i) At trial, Flexible argued entitlement to a directed verdict upon Ervast's breach of fiduciary duty claim, because Ervast's resignation required it to purchase his stock at a fixed price, foreclosing any duty to disclose information concerning the stock's future market value.[2] Flexible correctly observes that the duty to disclose is immaterial where the "plaintiffs could not refuse to sell their shares under the contract, at the contract price." *Jordan v. Smith*, 596 FSupp. 1295, 1307 (C) (3) (N.D. Ga. 1984). The ESOP, however, shows that Ervast had the option to sell his stock to Flexible upon termination of employment or "not later than 120 days after the date [he] incur[red] a one year break in service." Likewise, while the record shows that

---

[1] Pursuant to *Basic, Inc. v. Levinson*, 485 U. S. 224, 231-232 (II) (108 SC 978, 99 LE2d 194) (1988), the trial court charged the jury that an "omission will be considered *material* if its disclosure would alter the total mix of facts available to an investor and if there is a substantial likelihood that a reasonable shareholder would consider it important to the investment decision." (Emphasis supplied.)

[2] Although Flexible advances other arguments by its brief on appeal, it did not assert them in its motion for directed verdict, and they will not be considered here for the first time on appeal. *First Union*, supra, 215 Ga. App. at 504, n. 3; see also *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (573 SE2d 389) (2002) ("[O]ur appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. . . . Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court.") (citations omitted).

Flexible had an option to "call" or buy back Ervast's shares held in its Incentive Plan, this plainly does not constitute a contractual duty to purchase Ervast's stock upon his resignation at a fixed price.

Given the foregoing, the trial court's denial of Flexible's motion for a directed verdict upon Ervast's breach of fiduciary duty claim was not error. *First Union*, supra, 215 Ga. App. at 502 (1) (a).

(ii) Flexible contends that the trial court erred in failing to direct a verdict as to Ervast's ordinary negligence claim as to its selection of October 26, 1999 as the date of materiality prompting the duty to disclose. We agree.

Georgia's business judgment rule relieves officers and directors from liability for acts or omissions taken in good faith compliance with their corporate duties. OCGA §§ 14-2-830 (d); 14-2-842 (d). Such rule forecloses liability in officers and directors for ordinary negligence in discharging their duties. See OCGA §§ 14-2-830 (a) (2); 14-2-842 (a) (2) (allowing officers and directors to discharge their duties under an ordinarily prudent man standard to the extent they reasonably rely on the advice of counsel, without independent knowledge, rendering such reliance unwarranted). "[O]rdinary diligence or negligence is what an ordinarily prudent man would do under the same circumstances. . . ." *Western &c. R. Co. v. Vaughan*, 113 Ga. 354 (38 SE 851) (1901). Given that officers and directors thus are protected from liability for ordinary negligence, the trial court erred in refusing to direct a verdict for Flexible on Ervast's ordinary negligence claim.

(iii) That there was some evidence of a breach of fiduciary duty, as described in subsection (1) above, some evidence of bad faith arose warranting OCGA § 13-6-11 attorney fees.

> [I]t is well established as the law of this state that every intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees. Moreover, bad faith is a question for the jury to be determined from consideration of the facts and circumstances in the case.

(Citations and punctuation omitted.) *Stargate Software Intl. v. Rumph*, 224 Ga. App. 873, 878 (4) (482 SE2d 498) (1997). Consequently, the trial court did not err in denying Flexible's motion for a directed verdict as to Ervast's claim for OCGA § 13-6-11 attorney fees.

3. In light of the foregoing, we elect not to address Flexible's remaining claims of error, which also assert that the trial court erred in denying its motion for a directed verdict.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

*Alston & Bird, Patrick C. DiCarlo,* for appellants.
*Hill, Kertscher & Wharton, Douglas R. Kertscher,* for appellee.