## A11A1179. ABLE v. THE STATE.

(718 SE2d 96)

ELLINGTON, Chief Judge.

A Hall County jury found Marvin Able guilty beyond a reasonable doubt of possession of marijuana with intent to distribute, OCGA § 16-13-30 (j) (1), and possession of marijuana, OCGA § 16-13-30 (j) (1). Following the denial of his motion for new trial,[1] Able appeals, contending that the evidence was insufficient to support his conviction for possession with intent to distribute, that the trial court erred in charging the jury, and that he received ineffective assistance of counsel. Because we find harmful errors in the trial court's jury charge, we reverse Able's convictions. However, because the evidence was sufficient to support Able's convictions, he may be retried.[2]

1. Able argues that there was insufficient evidence to support his conviction for possession of marijuana with intent to distribute.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

In the early afternoon of June 17, 2007, Safiya Cathey, Able's girlfriend of about two months, drove to Able's Sandy Springs home in her Jeep Liberty. At the time, Able's long-time friend, Itaka Howell, had been staying at Able's house and sleeping on the sofa since being evicted from his apartment about two and a half months earlier. Cathey, Able and Howell relaxed at Able's house for about 45 minutes, during which time Cathey and Able smoked some marijuana that Cathey had brought with her. Able then told Cathey that he wanted to do a favor for Howell and asked her if they could borrow her car. Because it was her birthday and she did not want to spend

---

[1] Although the court denied Able's motion for new trial, it also ruled that Able's convictions should have been merged for sentencing purposes. Accordingly, the court vacated the sentence imposed on the felony possession conviction.

[2] See *Williamson v. State*, 300 Ga. App. 538, 539 (685 SE2d 784) (2009).

time at Able's house alone, and because she thought that the errand would not take long, Cathey insisted on going with the men, even though she did not know where they were going or why. As they left Able's house, Cathey saw that Howell was carrying an insulated "icy-hot" bag. Howell put the bag in the rear storage compartment of the car and sat in the back seat; Able drove the car and Cathey sat in the front passenger seat, where she slept during most of the trip. It is undisputed that, during the time that the insulated bag was in the rear storage compartment of Cathey's car, the bag was sealed shut.

Able drove to a parking lot in front of a Publix grocery store near an exit off of highway I-985 in Hall County. After Able parked the car, Howell got out of the back seat, carrying the insulated bag, and walked behind the car toward an adjacent McDonald's. Two police officers suddenly intercepted Howell, however, and they ordered him to drop the bag, show his hands and lie on the ground before handcuffing and arresting him. At trial, the State showed that inside the insulated bag were five gallon-size ziplock bags containing marijuana; the total weight of the marijuana was approximately five pounds.

After Howell was secured, police officers surrounded Cathey's car and ordered Able and Cathey to show their hands and get out. One of the officers testified at trial that, when he approached Cathey's car, he smelled the odor of marijuana; however, another officer at the scene at the same time testified that he did not smell marijuana while standing next to the driver's side door of Cathey's car. Cathey testified at trial that, before the officers approached her car, she did not know what was in Howell's insulated bag and that she did not smell the odor of marijuana in her car during the trip to Hall County.

While questioning Cathey at the scene, an officer asked her if he could search her car, and she consented. During the search, the officer found no paperwork or phone numbers that appeared to be related to drug sale activities, nor did he find a large amount of cash. Inside Cathey's purse, however, the officer found a marijuana "joint" and some "roaches," rolling papers, flavor drops to change the taste of marijuana, and some business cards. Able and Cathey were arrested and charged, along with Howell, with possession of marijuana with intent to distribute and possession of marijuana.[3]

At Able's trial, the State showed that the officers' apprehension

---

[3] On April 4, 2008, Cathey entered a negotiated guilty plea to possession of marijuana with intent to distribute and possession of marijuana. Howell absconded after his preliminary hearing and has not been tried on the charges.

of Howell was the result of a controlled drug buy utilizing a confidential informant ("C. I.") who had previously purchased drugs from Howell. The State presented no evidence to show that the C. I. had ever communicated with, met or conducted drug deals with either Able or Cathey. Further, according to an officer who worked with the C. I., each time Howell previously met with the C. I. to conduct a drug deal at that Hall County location, Howell had arrived in a different vehicle; it is undisputed that Howell did not own a car. In fact, the officer admitted that the controlled drug buy on June 17 was briefly delayed because Howell was having trouble finding transportation to the Hall County location.

In contending that the evidence was insufficient to support his conviction for possession of marijuana with intent to distribute, Able argues that the State failed to present any evidence that Howell told him that he planned to sell drugs in Hall County before or during the trip, that he had any other reason to know about Howell's plan, or that he knew or had any reason to inquire about what was in Howell's insulated bag. He argues that, as a result, the State failed to meet its burden of proving beyond a reasonable doubt that he intentionally worked with or assisted Howell in the possession and attempted sale of the marijuana.

> The intention with which an act is done is peculiarly for the jury. It is often difficult to prove with direct evidence an individual's intent as it existed at the time of the act for which they are being prosecuted. Therefore, it is often necessary to prove such intent through the use of circumstantial evidence. Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this. A jury may infer that a person acted with criminal intent after considering the "words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6. In order to support a conviction, such circumstantial evidence does not have to exclude *every* possible hypothesis other than the defendant's guilt, but only *reasonable* hypotheses. Whether a hypothesis is reasonable is a question for the jury, and such finding will not be disturbed on appeal unless the guilty verdict is insupportable as a matter of law.

(Citations and punctuation omitted; emphasis in original.) *Eberhart v. State*, 241 Ga. App. 164, 165 (1) (526 SE2d 361) (1999). See also *Wood v. State*, 300 Ga. App. 674, 676 (686 SE2d 319) (2009) ("'[C]riminal intent may be inferred from presence, companionship, and conduct before, during and after the offense.'") (citation and

punctuation omitted).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that there was sufficient evidence from which the jury could find that Able had the requisite knowledge and intent to assist with or participate in the crime and that he was, therefore, guilty beyond a reasonable doubt of possession of marijuana with intent to distribute.

2. Able contends that the trial court committed harmful error when it misstated the law in its jury instructions on "mere association" and "mere presence" and when it failed to correct the errors after Able's counsel objected to the instructions following the jury charge. Because we find that the court's instructions on "mere association" and "mere presence" were not only significant misstatements of the law, but that the instructions also directly conflicted with other closely related instructions given by the trial court, we find that the court's jury charge constituted harmful error and that, consequently, Able's convictions must be reversed.

The court gave the jury the following instructions on "mere association" and "mere presence":

> A jury is not authorized to find a person who was merely associated with other persons involved in the commission of a crime guilty of the commission of the crime, or guilty of consent to the commission of the crime, or guilty of concurrence in the commission of the crime, or guilty as a party to a crime unless the evidence presented by the State of Georgia proves beyond a reasonable doubt that such person committed the crime, *or consented to the commission of the crime, or concurred in the commission of the crime,* or was a party to the crime.

> A jury is not authorized to find a person who was merely present at the scene of the commission of a crime at the time of its perpetration guilty of the commission of the crime or guilty of consent to the commission of the crime or guilty of concurrence in the commission of the crime or guilty as a party to the crime unless the evidence presented by the State of Georgia proves beyond a reasonable doubt that such person committed the crime *or consented to the commission of the crime or concurred in the commission of the crime* or was a party to the crime.

(Emphasis supplied.)

Following the jury charge, Able's counsel objected to the language that is emphasized above, arguing that the charges as given

improperly instructed the jury that it could find Able guilty of the crimes charged if he either consented to or concurred in the commission of the crime, *even if he did not intentionally commit, assist or otherwise participate in the crimes*.[4] As counsel pointed out, the charges as given were not only misstatements of the law,[5] but they also directly conflicted with other related jury instructions given by the court.[6] The trial court overruled counsel's objection, finding that the charges as given were appropriate.

"All charging errors are presumed to be prejudicial unless the record shows them to be harmless." (Punctuation and footnote omitted.) *Williamson v. State*, 300 Ga. App. at 550 (6). See also *Baird v. State*, 260 Ga. App. 661, 663-664 (1) (580 SE2d 650) (2003) ("Error

---

[4] The record shows that neither party requested the language of these instructions as given by the court.

[5] See OCGA § 16-2-20 (a) (party to a crime); *Jordan v. State*, 272 Ga. 395, 396 (1) (530 SE2d 192) (2000) ("A common criminal intent must be proven to establish that one is a party to a crime.") (citation omitted); *Wood v. State*, 300 Ga. App. at 676 ("[M]ere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime[.]") (citation and punctuation omitted); see also footnote 6, infra.

[6] Specifically, the emphasized language in the "mere association" and "mere presence" instructions conflicted with the emphasized portions of the following instructions:

> *Every party to a crime may be charged with and convicted of commission of the crime.* . . . *A person is a party to a crime only if that person, A, directly commits the crime, or, B, intentionally helps in the commission of the crime.*

> Any party to a crime who did not directly commit the crime may be charged, tried, and convicted for commission of the crime upon proof that the crime was committed and that the person was a party to it even though the person alleged to have directly committed the crime has not been prosecuted or is not amenable to justice.

> Knowledge on the part of Mr. Able that the crimes of possession of marijuana with intent to distribute and possession of marijuana were being committed and *that Mr. Able knowingly and intentionally participated in or helped in the commission of such crimes must be proved by the State of Georgia by evidence beyond a reasonable doubt.* . . .

> *Mere presence at the scene of a crime, even when coupled with knowledge and approval, but not amounting to an accused directly committing the crime or intentionally helping in the commission of the crime, is not sufficient to show that an accused is a party to a crime.*

> To prove that a defendant is a party to a crime, *the State of Georgia must prove that the defendant and any other alleged perpetrator of a crime had [a] common criminal intent to commit the crimes alleged.*

> However, criminal intent may be found by the jury upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.

> While *mere presence at the scene of the commission of a crime, even when coupled with knowledge and approval, is not sufficient to convict an accused of being a party to a crime*, presence, companionship and conduct before and after the offenses alleged are circumstances from which an accused's criminal intent and participation in or help in the criminal act may be inferred by the jury in finding an accused to be a party to a crime.

> Whether or not you, the jury, make any inference in this case is a question for you, the jury, to decide.

(Emphasis supplied.)

in a jury charge is harmless where there is no reasonable probability that it misled the jury or permitted a defendant's conviction on an erroneous theory.") (punctuation and footnote omitted). Viewing the trial court's charge as a whole, we conclude that there is a reasonable probability that the erroneous charges may have misled or confused the jury regarding what the State was required to prove, because the charges misinformed the jury that it would be authorized to convict Able even if it found that he only consented to or concurred in the commission of the crimes, as opposed to intentionally assisting or participating in them. Id.

Here, even though there was sufficient evidence for the jury to find that Able had actual or constructive knowledge about the presence of the marijuana in the car or about Howell's plans *and* that he intended to participate in the crimes or to assist Howell in committing them by driving him to Hall County, the evidence was not overwhelming. Instead, the evidence also supported alternate findings, including a finding that, even though Able did not intentionally participate in the crime or directly assist Howell, he nonetheless consented to or concurred in the commission of the crime. In the latter situation, however, the jury would not have been authorized to convict Able as a party to the crimes, despite the court's erroneous statement to the contrary. Therefore, because the jury may have convicted Able based on an erroneous legal theory, we conclude that the trial court's error in giving the challenged instructions was not harmless. *Williamson v. State*, 300 Ga. App. at 550 (6).

Moreover, the fact that the trial court subsequently gave correct jury instructions on knowledge, intent and party to a crime, as shown above, did not render the errors harmless, because there was a clear conflict between the erroneous instructions on "mere association" and "mere presence" and the correct, related instructions. Where two or more jury instructions directly conflict with one another, a new trial is required. *Flexible Products Co. v. Ervast*, 284 Ga. App. 178, 180 (1) (643 SE2d 560) (2007).

> A charge containing two distinct propositions conflicting the one with the other is calculated to leave the jury in such a confused condition of mind that it can not render an intelligible verdict, and requires the grant of a new trial. The jury cannot be expected to select one part of a charge to the exclusion of another, nor to decide between conflicts in the charge or determine whether one part cures a previous error, without having its attention specially called thereto and being instructed accordingly.

(Citations and punctuation omitted.) Id. See also *Bryant v. State*, 191

Ga. 686, 719-720 (13) (13 SE2d 820) (1941) (reversing the defendant's conviction because the trial court gave two conflicting jury instructions); *Cameron v. State*, 123 Ga. App. 282, 283 (1) (180 SE2d 554) (1971) (accord).

Accordingly, the trial court's judgment of conviction must be reversed.

3. Able also argues that the trial court erred in charging the jury on "deliberate ignorance," contending that the charge (a) was not supported by the facts, and (b) was a misstatement of the law.[7]

This Court has repeatedly recognized that

> the knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance of criminal activity. The deliberate ignorance instruction is based on the alternative to the actual knowledge requirement at common law that if a party has his suspicions aroused but then deliberately omits to make further inquiries, because he wishes to remain in ignorance, he is deemed to have knowledge. A deliberate ignorance instruction is appropriate when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution. A court should not instruct a jury on deliberate ignorance when the evidence points to actual knowledge or no knowledge on the defendant's part.

(Punctuation and footnotes omitted.) *Williamson v. State*, 300 Ga. App. at 548-549 (6). See also *Aguilera v. State*, 293 Ga. App. 523, 525 (1) (667 SE2d 378) (2008) (accord); *Maddox v. State*, 272 Ga. App. 440, 445 (4) (612 SE2d 484) (2005) (accord); *Perez-Castillo v. State*, 257 Ga. App. 633, 634-635 (572 SE2d 657) (2002) (accord).

The record in this case shows that the State requested the same "deliberate ignorance" jury instruction that was at issue in *Perez-Castillo v. State*, 257 Ga. App. at 635.[8] During the charge conference,

---

[7] We note that Able's counsel did not object to the instruction at trial on the basis that it was a misstatement of the law. However, because Able has raised an ineffective assistance of counsel claim that is based on his trial counsel's failure to object to the court's "deliberate ignorance" instruction on the basis that it was a misstatement of the law, and because the instruction may be challenged again on retrial, we will address this issue. Consequently, Able's ineffective assistance claim is moot.

[8] The jury instruction in *Perez-Castillo v. State* stated as follows:

> The element of *knowledge, intent*, may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have

Able's counsel objected to the instruction on the basis that it was not supported by the facts in evidence. The court overruled the objection.

At some point between the charge conference and its jury charge, the trial court, apparently sua sponte, changed the language of the requested "deliberate ignorance" instruction so that it referred to "intent" not once, but twice.[9] The court then instructed the jury, in relevant part, as follows:

> The element[s] of *knowledge and intent* may be satisfied by inferences drawn from proof beyond a reasonable doubt that a defendant deliberately closed his eyes to what would otherwise have been obvious to the defendant. A finding by evidence beyond a reasonable doubt of the defendant's conscious purpose to avoid enlightenment would permit the jury to make an inference of *knowledge and intent*. Stated another way, a defendant's *knowledge* of a fact may be inferred from willful and intentional blindness to the existence of the fact. Again, whether or not the jury draws any such inference is a matter solely within the discretion of the jury.

(Emphasis supplied.) Following the jury charge, Able's counsel again objected to the charge on the basis that it was not supported by evidence.

Subsequently, in his motion for new trial, Able asserted that the "deliberate ignorance" charge as given by the trial court constituted harmful error, citing *Williamson*, supra, which this Court had decided a few months after Able's trial. In denying Able's motion for new trial, the trial court ruled that the instruction as given was correct and was supported by the evidence.

(a) Having reviewed the evidence presented, we agree with the trial court's finding that there was some evidence to support a jury instruction on "deliberate ignorance." See *Polite v. State*, 273 Ga. App. 235, 242 (8) (614 SE2d 849) (2005) ("To authorize a jury

---

been obvious to him. A finding beyond a reasonable doubt of conscious purpose to avoid enlightenment would permit an inference of *knowledge*. Stated another way, a defendant's *knowledge* of a fact may be inferred from willful blindness to the existence of the fact. Again, whether or not you draw any such inference is a matter solely within your discretion.

(Emphasis supplied.) 257 Ga. App. at 635. In that case, the appellant argued that the instruction was improper because it obviated the State's burden of proving that he had actual knowledge of the contents of two packages that he had accepted when they were delivered to his home. Id. The appellant apparently did not challenge the instruction on the basis of its inclusion of the word "intent."

[9] There is nothing in the record to show that either the State or Able's counsel requested the changes to the instruction.

instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge.") (citation and punctuation omitted).

(b) The "deliberate ignorance" instruction given by the trial court, however, was a misstatement of the law. In *Williamson v. State*, the appellant claimed that the trial court erred by charging the jury, over objection, on "deliberate ignorance." 300 Ga. App. at 548 (6). In that case, the court charged the jury as follows:

> Ladies and gentlemen, I charge you that the elements of *knowledge or intent* may be satisfied by inferences drawn from proof that a Defendant deliberately closed his or her eyes to what would otherwise have been obvious to him or her. A finding beyond a reasonable doubt of conscious purpose to avoid enlightenment would permit an inference of *knowledge*. Stated another way, a Defendant's *knowledge* of a fact may be inferred from willful blindness to the existence of the fact. Again, whether or not you draw any such inference is a matter solely within your discretion.

(Punctuation omitted; emphasis supplied.) Id. This Court concluded that the trial court erred in giving the "deliberate ignorance" instruction because the evidence presented did not support it.[10] Id. at 549 (6).

More importantly as to the instant case, however, this Court *also* ruled that the instruction as given was an erroneous statement of the law. *Williamson v. State*, 300 Ga. App. at 549 (6).

> The court charged that intent is an essential element of any crime and must be proved by the [S]tate beyond a reasonable doubt. Yet the deliberate ignorance charge instructed the jury that the element of intent could be satisfied by inferences drawn from proof that [the appellant] deliberately closed his eyes to what would otherwise have been obvious to him. *The deliberate ignorance instruction, when appropriate, provides another way to satisfy the knowledge element of a criminal offense, not the intent element.* All charging errors are presumed to be prejudicial unless the record shows them to be harmless. Viewing the trial court's charge as a whole, as we must, we conclude that the charge

---

[10] According to this Court, the appellant "admitted that he knew about the drug activity in the house, but denied participating in it. This was not one of those comparatively rare cases where there are facts that point in the direction of deliberate ignorance." (Punctuation and footnote omitted.) *Williamson v. State*, 300 Ga. App. at 549 (6).

may have misled or confused the jury regarding what the [S]tate was required to prove[.]

(Punctuation and footnotes omitted; emphasis supplied.) Id. at 549-550 (6). In so ruling, this Court implicitly overruled this Court's opinion in *Maddox v. State*, 272 Ga. App. at 446 (4) (b), to the extent that this Court stated, in dicta, that a "deliberate ignorance" instruction that included the phrase "knowledge or intent" was a correct statement of law.[11]

Because we have already ruled that Able is entitled to a new trial, it is unnecessary to decide, after considering the evidence presented and reading the trial court's jury charge as a whole, whether the record shows that the erroneous "deliberate ignorance" instruction was harmless. Instead, we hold that, if the instruction is given during the retrial of Able's case, it should state as follows:

> The element of knowledge may be satisfied by inferences drawn from proof that a Defendant deliberately closed his or her eyes to what would otherwise have been obvious to him or her. A finding beyond a reasonable doubt of conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a Defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact. Again, whether or not you draw any such inference is a matter solely within your discretion.

*Judgment reversed. Miller, P. J., and Doyle, J., concur.*

DECIDED OCTOBER 27, 2011.

*Charles E. W. Barrow*, for appellant.
*Lee Darragh, District Attorney, Lindsay H. Burton, Assistant District Attorney*, for appellee.

---

[11] In *Maddox v. State*, the appellant challenged the "deliberate ignorance" instruction on the basis that there was no evidence presented to support it. 272 Ga. App. at 445 (4). There is nothing in the opinion to show that the appellant challenged the instruction as an incorrect statement of law based upon its inclusion of the word "intent."